IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:   1:19-cv-03710-RM-NRN

EMINA GEROVIC,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, a Body politic and corporate of the State of Colorado, acting by and through its DEPARTMENT OF GENERAL SERVICES and FACILITIES MANAGEMENT OPERATIONS;
LEROY LEMOS, in his official capacity as Facilities Management Operations Supervisor at the Department of General Services, and in his individual capacity;
MURPHY ROBINSON, in his official capacity as Executive Director of General Services, and in his individual capacity;
JAMES E. WILLIAMSON, in his official capacity as Facilities Management Operations Director at the Department of General Services, and in his individual capacity;
KEVIN O'NEIL, in his official capacity as Facilities Management Operations Deputy Director at the Department of General Services, and in his individual capacity; a,
JOEL WOMICK, in his official capacity as DGS Contingent Worker at HSS Inc., and in his individual capacity.
KYLE KNOEDLER, in his official capacity as DGS Facility Supervisor of HSS Inc., and in his individual capacity; and
HSS, INC., a Colorado Corporation, acting as a hired agent by the City and County of Denver, by and through their contingent workers, Joel Womick, Kyle Knoedler, and others

     Defendants.

SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Emina Gerovic, by and through her undersigned attorney, as and for her Second Amended Complaint against Defendants, states and alleges as follows:

## JURISDICTION AND VENUE

1.      The court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331, 1337 and 1343. Plaintiff is alleging violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; violation of her rights to the equal protection of the law, as set forth in the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988; and for intentional violation of her rights under the Family Medical Leave Act, 29 U.S.C. § 2615 (a)(2), (FMLA).

2.      Venue is proper under 28 U.S.C. § 1391. The unlawful employment practices alleged herein were committed within the State of Colorado.

3.      On or about August 31, 2018, Plaintiff timely filed a charge of discrimination based on race and color, as well as retaliation, for her unlawful termination, with the Equal Employment Opportunity Commission ("EEOC), in EEOC Charge No. 41201802650. Such charge was filed within 300 days of the dates of discrimination. At the request of Plaintiff, the EEOC issued a Notice of Right to

Sue on October 1, 2019. This case is filed within 90 days from the date of receipt of such Notice.

## GENERAL ALLEGATIONS

4.      Plaintiff is a naturalized, white United States citizen, of Bosnian ethnicity, and is a resident and domiciliary of the State of Colorado.

5.      Defendant, City and County of Denver through its General Services and Facilities Management Operations ("Denver") is a body politic and corporate of the State of Colorado, as authorized by Article XX of the Colorado Constitution, and provides maintenance services to facilities belonging to Denver. Denver is engaged in interstate commerce.

6.      Defendant, Leroy Lemos ("Lemos"), at all relevant times, was the Facilities Management Operations Supervisor, at the Department of General Services, of Denver and had supervisory authority over Plaintiff. Mr. Lemos is Hispanic.

7.      Defendant, Murphy Robinson ("Robinson"), at all relevant times, was the Executive Director of General Services, for Denver, and was in overall charge of Facilities Management Operations.

8.      Defendant, James E. Williamson ("Williamson"), at all relevant times, was the Director of Facilities Management Operations in the Department of General Services, of Denver. In that capacity, he was the supervisor of Defendant, Kevin

O'Neil, the Deputy Director of facilities, who had supervisory authority over Defendant, Leroy Lemos, Plaintiff's second-level supervisor.

9.      Defendant, Kevin O'Neil ("O'Neil"), at all relevant times, was the Deputy Director of Facilities Management at the Department of General Services, of Denver, who had supervisory authority over Defendant, Leroy Lemos, Plaintiff's second-level supervisor.

10.      Defendant, Joel Womick ("Womick"), at all relevant times, was GS Contingent Worker at HSS, Inc., working under the direction and supervision of Denver, and was responsible for distributing and ordering the placement of the BOLO Posters with Plaintiff's photo, as set forth hereinafter.

11. Defendant, Kyle Knoedler ("Knoedler"), at all relevant times, was DGS Facility Security Supervisor of HSS, Inc., working under the direction and supervision of Denver, and was responsible for directing Womick to distribute and post the BOLO Posters with Plaintiff's photo, as set forth thereinafter.

12.      Defendant, HSS Inc.("HSS"), is a Colorado Corporation, hired by the City and County of Denver, working under the direction and supervision of Denver, and was responsible for providing contract agents, Knoedler and Womick, who directed and distributed the placement of the BOLO posters with Plaintiff's photo, as set forth hereinafter.

13.     Plaintiff, Emina Gerovic, is a naturalized US citizen, with Bosnian ethnicity, who arrived in America after enduring many years of war in her birthplace, Bosnia, who began her employment with Denver on or about August 11, 2014, as a custodian in the Facilities Management Department of the Department of General Services, of Denver. She worked in that capacity until her unlawful and discriminatory termination on November 27, 2017.

14.     From the very beginning of her employment with Denver, Plaintiff was a good, loyal, and dedicated employee, who took great pride in her work.  As a result of her competent, efficient, and exemplary work, Plaintiff received unsolicited and repeated praise from the members of the facilities that she cleaned.

15.     Denver by virtue of the actions of Lemos, and the other Defendants, as well as its own actions, created and condoned a work environment that was hostile to employees who are not Hispanic, and who are of different ethnic and racial background than Lemos. Plaintiff was subjected to discrimination, and a hostile working environment, due to her race, color, ancestry and ethnic background, and retaliated against for reporting the discrimination. Plaintiff was forced to endure less than favorable working conditions, when compared to Hispanic workers in her department, or other workers of race, color, ancestry or ethnicity, different from Hispanic workers..

16.     Due to an injury to her back, hip and leg, on the job, Plaintiff was on intermittent medical leave, from July 7, 2017, until she was allowed to return to modified work in September and October 2017. During that time, her intermittent leave was taken based on a worker's compensation covered injury, as well as FMLA intermittent leave. During the period from July 2017 through November 27, 2017, Denver retaliated against her for taking FMLA leave. Retaliation took the form of increased disciplinary action against her, by Lemos, including a contemplation of discipline letter of September 19, 2017, notification of a work change location on September 21, 2017, and termination on November 27, 2017, shortly after she returned from FMLA leave.

17.     Plaintiff complained to Anne Carter and Christine Howard of the Human Resource Department, and to Robinson, Williamson, and O'Neil, that she was being treated unfairly and being discriminated against, repeatedly by Lemos, and that she was treated less favorably than Hispanic employees.

18.     Examples of discrimination referred to in paragraphs 13 and 15 above, include, but are not limited to the following:

a.     Lemos repeatedly singled Plaintiff out for alleged disciplinary actions and punishment for matters that were trivial, and not related to her actual job performance, and were a pretext for discrimination. Contrary to the

7

disciplinary writeups or verbal reprimands by Lemos, the staff in the police building in which she actually worked, repeatedly complimented her on her work and sent complimentary letters and emails to her supervisors. Despite disciplining Plaintiff, her supervisors were not at the location of her work and did not witness the quality of her work.

b.      Lemos had a pattern of disciplining employees under his supervision more harshly if the employee was not Hispanic. For example, a Hispanic custodian, a co-worker of Plaintiff, Danielle Garcia, was disciplined for gesturing disrespectfully to other employees by putting up her middle finger, or "flipping them off." Contrary to what happened to Plaintiff, where one of the reasons for her termination was her failure to respect others, Ms. Garcia was not terminated. Another Hispanic custodian, whom Ms. Gerovic only knows as Teresa, another co-worker of Plaintiff, had been disciplined many times for treating both customers and co-workers badly. She was no longer allowed to work in the police stations but has not been terminated, contrary to what was done to Plaintiff. Another Hispanic custodian named David Chavez, another co-worker of Plaintiff, complained to Plaintiff about his hourly wage; however, according to what Mr. Chavez told Plaintiff, he was making $.50 per hour more than Ms. Gerovic, and had been employed

for one year less than Plaintiff, in a similar position to that of Plaintiff. His higher wage, based on information and belief, was solely because he was Hispanic.

c.     On September 21, 2015, Ms. Gerovic was improperly disciplined, at the request of Lemos, and given a verbal warning for not wearing her safety shoes, despite a note from her doctor that she was unable to wear them due to a foot condition, whereby her feet would bleed when wearing the safety shoes. After receiving the reprimand, she returned to using her safety shoes even though they made her feet bleed and caused her pain for multiple weeks.

d.     On October 1, 2015, Ms. Gerovic was improperly given a verbal warning, by Lemos, for willful neglect of duty regarding the inspection of an area behind some stairs. Her co-workers noted, and told her, that she was covering more area than any other custodian and that the obscure "white glove test" behind the stairs seemed odd. In fact, this was not done with areas that Hispanic employees cleaned and was a pretext for discrimination.

e.     On June 13, 2016, Plaintiff received documented counseling after Lemos reported that she had used her cell phone for personal use during work time. She and a co-worker had been in contact regarding non-working toilets

9

as well as discussing his personal and family problems. Upon information and belief, Hispanic employees were not disciplined for use of personal cell phones during work time.

f.      On March 17, 2017, Plaintiff was disciplined at the request of Lemos because he was unable to reach her on her Denver cell phone. She received a documented counseling conversation to ensure that her cell phone was on and voicemail was set up. Upon information and belief, Hispanic employees were not disciplined for such conduct. Additionally, the area in which she worked, Denver Police District Five, has extremely poor cell phone reception, and had been reported as such by Plaintiff to Lemos

g.      On May 4, 2017, Plaintiff received a written reprimand and disciplinary action letter, from Lemos, regarding an incident at the Arie P. Taylor building on March 16, 2017, in which Plaintiff asked two men to leave the building because it wasn't open yet. One of the men yelled and cursed at her and allegedly made a complaint against her. Despite the fact that police Lt. Kenneth Chavez, who worked in the building with Plaintiff, conducted an investigation and commended Plaintiff for acting appropriately during the incident, she was still disciplined. Lt. Chavez even attempted to contact Lemos

to provide him information regarding the incident but received no response from Lemos or any other member of management.

h.      C.R.S. §24-34-402.5 makes it a discriminatory practice to terminate any employee due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours. Despite that legal prohibition, on September 11, 2017, Lemos confronted Ms. Gerovic about posts on her personal Facebook page telling her she was impersonating a police officer and indicating that was a serious offense. The posts included some photos from 3 years prior and included a photo of Ms. Gerovic wearing a police hat at a retirement party, as well as some photos of her outside of work hours wearing clothing with the Denver Police Department logo. Ms. Gerovic explained that the hat was in fun and the clothing was a gift. The profile information on Facebook listed her work location as Denver Police District 5 and listed two other police references as "Traffic Operations" and "Police Officer." Ms. Gerovic told Lemos that she had listed her work location as Denver Police District 5, which was accurate, but that she did not know how the terms "Traffic Operations" and "Police Officer" were added. She told Lemos she would have her daughter assist her to remove them immediately, which she did that same day. Lemos directed her to the Denver Police

Department Internal Affairs Bureau for an investigation. Sgt. Randy Steinke conducted an investigation and found no wrongdoing by Ms. Gerovic. Despite the statutory prohibition for terminating an employee for such activity off the premises, on September 19, 2017, Plaintiff was given a contemplation of discipline letter for her Facebook posts, and ultimately fired for such activity. The Facebook activity of Plaintiff, off the premises of her employer, and not during work hours, was lawful, and should not have been used as a basis for her termination.

      i.      Less than one week later, Plaintiff was reassigned to another location and was informed she would have a shift change from a morning shift to an evening shift (1 :30 p.m. to 10 p.m.). The shift change was punitive in nature, as Lemos knew how much she loved working at the District 5 police building, and how the police staff loved and admired her. Plaintiff attempted to file a complaint with Anne Carter of Human Resources but was told she could not. Ms. Gerovic met Defendant O'Neal, Lemos' supervisor, about the shift change, and complained about the unfair treatment by Lemos. He informed her that anyone's work location could be changed at any time. She tried to schedule a meeting with O'Neal's supervisor Murphy Robinson, the Facilities Management Director, but her

request was denied. Plaintiff recalled Robinson's statement at a staff meeting that he "had an open-door policy" so she went to his office to speak with him. After this meeting, Robinson was able to return Ms. Gerovic to her morning shift, but her request to remain at her work location at Police District 5, was denied. When Plaintiff reacted emotionally to this decision, caused by Lemos' actions, she was put on administrative leave and asked to undergo a mental health evaluation.

j.      Plaintiff was permitted to return to work after her mental health evaluation and upon her return in early October 2017, she noticed building patrons acting strangely toward her, and overheard them talking about her. When she inquired what was wrong, she discovered that "Be On the Lookout," or BOLO, posters were posted in the building with her picture on them. The posters were dated October 3, 2017 and indicated that she had been terminated and to notify personnel immediately if she was seen in the building. The posters were distributed on September 22, 2017, to be posted in all Denver buildings, by Defendants Womick, Knoedler and HSS Inc., at the direction of Denver and some or all of the other Defendants, advising everybody entering the buildings that Plaintiff had been fired and to report if she entered any buildings. The posters were dated October 3, 2017, but were

not noticed by Plaintiff, until she overheard co-workers talking about them on or about October 5, 2017. The posters were a further discriminatory act against Plaintiff, stating that she was no longer employed by Denver, when she in fact was not terminated until November 27, 2017. The BOLO posters caused Plaintiff great embarrassment and humiliation.

k.      On October 18, 2017, Plaintiff received a Notification of Contemplation of Disciplinary Action, citing the Facebook posts, failure to follow the chain of command by meeting with Facilities Management Director Murphy Robinson, and a recently received complaint that claimed she used vulgar language in the workplace nearly two years prior. Such Notification was based upon impermissible and unlawful factors and was a continuation of the discriminatory practices of Lemos and other City officials. The Notice was signed by Lemos, and copied to Defendants, Robinson, O'Neill and Williamson, who took no action to object to such Notice.

l.      On November 27, 2017, Plaintiff received a Notification of Dismissal indicating she had been fired. This was signed by Defendant Williamson and copied to defendants, Lemos, O'Neill, and Robinson.

m.     The discriminatory actions of Defendants toward Plaintiff deprived

her of rights to make and enforce contracts and denied Plaintiff the

enjoyment of all the benefits, privileges, terms and conditions of a

contractual relationship of employment as is enjoyed by white citizens, who

are not of different ancestry or ethnicity.

### FIRST CLAIM FOR RELIEF
### (Title VII Race and Color Discrimination - Against Denver)

19.     Plaintiff hereby incorporates and makes reference to each and every

allegation in paragraphs 1-18 of this complaint, as if set forth in extenso.

20.     Defendant, Denver, through the Facilities Management Operations

Department, of the Department of General Services of Denver, and through

Defendants Lemos, HSS, Knoedler and Womick, knowingly, willingly, and

intentionally engaged in illegal employment practices and policies, which have

discriminated against the Plaintiff and other individuals because of their race,

ethnicity or color. Illegal employment practices and policies to which the Plaintiff

was subjected include, but are not limited to, the following:

a.     Maintaining practices and policies regarding terms and conditions

of employment which discriminated against non-Hispanic and ethnic

minority employees including the Plaintiff;

15

b.     Subjecting non-Hispanic and ethnic minority employees, including the Plaintiff, to a hostile and offensive work environment;

c.     Failing and refusing to prevent Defendant Lemos from discriminating against non-Hispanic and ethnic minority employees.

d.     Failing and refusing to take affirmative action to correct the effect of the discriminatory policies and practices complained of herein;

e.     Issuing verbal and written disciplinary actions against Plaintiff, containing contrived, false, and misleading information to create the false appearance that Defendant had just cause to terminate Plaintiff;

f.     Putting up, and allowing to be put up, "Be on the Lookout" (BOLO) posters to humiliate and embarrass Plaintiff;

g.     Terminating Plaintiff; and,

h.     The discrimination by Denver, Lemos and the other Defendants, was a motivating factor in the termination of Plaintiff.

21.     As a proximate result of Defendant, Denver's actions, Plaintiff has suffered severe physical and emotional distress, mental anguish, humiliation and other non-economic losses, loss of wages, loss of job, loss of benefits, and other economic losses.

## SECOND CLAIM FOR RELIEF
### (Title VII Retaliation - Against Denver)

22.     Plaintiff hereby incorporates and makes reference to each and every allegation in paragraphs 1-21 of the complaint as if set forth in extenso.

23.     The Plaintiff complained of discrimination in her employment and the unfair treatment by Denver, through the Facilities Management Operations Department, of the Department of General Services of Denver, and through Defendant Lemos, and the other Defendants, in not only refusing to allow her to voice her complaints, but in refusing to effectively address the problems.

24.     Following Plaintiff's complaints of discrimination and unfair treatment by Lemos, she was retaliated against for reporting the discriminatory actions of Lemos.

25.     Defendant Denver was aware of Plaintiff's complaints.

26.     Plaintiff was then subjected to a material adverse action by the Defendant Denver, consisting of Denver's failure and refusal to take affirmative action to correct the effect of the discriminatory policies and practices complained of herein, and wrongfully terminating her from her job.

27.      The Plaintiff's complaints were the critical element in Defendant Denver's decision to take the adverse action of disciplining and terminating Plaintiff.

28.     As a proximate result of Defendants' actions, Plaintiff has suffered

severe physical and emotional distress, mental anguish, humiliation and other non-

economic losses, past and future, loss of wages, loss of job, loss of benefits, and other

economic losses.

### TIIRD CLAIM FOR RELIEF
**(Deprivation of Civil Rights Under Color of Law, 42 USC § 1981, Denial of
Equal Protection, under the Fourteenth Amendment, Against Lemos, Robinson,
Williamson, O'Neill, Womick, Knoedler and ISS)**

29.     Plaintiff hereby incorporates and makes reference to each and every

allegation in paragraphs 1-28 of this complaint, as if set forth in extenso.

30.     Plaintiff, in addition to being non-Hispanic and white, was of Bosnian

ethnicity and ancestry.

31.     Defendants, Lemos, Robinson, Williamson, O'Neill, Womick,

Knoedler and HSS had a duty to not violate state and federal laws by subjecting

Plaintiff to race, ethnic and color discrimination, and to avoid treating her differently

from others similarly situated, without a rational relationship to the

nondiscriminatory legitimate objectives of the Defendant, Denver.

32.     Defendants, Lemos, Robinson, Williamson, O'Neill, Womick,

Knoedler and HSS, acting under color of state law, intentionally and recklessly,

engaged in illegal practices and customs which deprived Plaintiff of her right to the

Equal Protection of the Law, and to be free of race, ethnic and color discrimination,

or discrimination based on ancestry, as guaranteed by the 14th Amendment to the United States Constitution, and laws of the United States, including but not limited to her right of employment, unless terminated for the causes set forth in Defendant Denver's policies.

33.    Defendants, Lemos, Robinson, Williamson, O'Neill, Womick, Knoedler and HSS, allowed, condoned and were deliberately indifferent to, the harassment and differential treatment of Plaintiff, based on her ethnicity, color and race.

34.    The practice, and custom of harassment by virtue of Plaintiff's race, ethnicity and color was effected under color of State law.

35.    There was no rational basis for the adverse, differential treatment of Plaintiff.

36. The acts and omissions of Defendants, Lemos, Robinson, Williamson, O'Neill, Womick, Knoedler and HSS, deprived Plaintiff of her rights as provided under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1981. Such acts and omissions were motivated by evil motive or intent and involved reckless or callous indifference to the federally protected rights of Plaintiff.

37.    The practice and custom of discrimination and differential

treatment by Defendants, Lemos, Robinson, Williamson, O'Neill, Womick, Knoedler and HSS, was the proximate cause of Plaintiff's termination of employment.

38.     As a proximate result of Defendants' , Lemos, Robinson, Williamson, O'Neill, Womick, Knoedler and HSS, actions, Plaintiff has suffered severe physical and emotional distress, mental anguish, humiliation and other non-economic losses, loss of wages, loss of job, loss of benefits, and other economic losses.

**FOURTI CLAIM FOR RELIEF**
**(Deprivation of Civil Rights Under Color of Law, 42 USC § 1983, Denial of**
**Equal Protection, under the Fourteenth Amendment, Against all Defendants)**

39.     Plaintiff hereby incorporates and makes reference to each and every allegation in paragraphs 1-38 of this complaint, as if set forth in extenso.

40.     Plaintiff, in addition to being non-Hispanic and white, was of Bosnian ethnicity and ancestry.

41.     Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

42.     Defendants had a duty to not violate state and federal laws by subjecting Plaintiff to race, ethnic and color discrimination, and discrimination based upon her ancestry, and a duty to avoid treating her differently from others of different racial, ethnic and ancestral characteristics, without a rational relationship to the non-discriminatory legitimate objectives of the Defendant, Denver.

43.     Pursuant to practice, custom or usage, Denver, in its Facilities Management Operations Department, of the Department of General Services of Denver, had a culture of allowing race, ethnic and color discrimination of its employees.

44.     The individually named Defendants, acting under color of state law, intentionally and recklessly, engaged in illegal practices and customs which deprived Plaintiff of her right to the Equal Protection of the Law, and to be free of race, ethnic, ancestral and color discrimination, as guaranteed by the 14th Amendment to the United States Constitution, and laws of the United States, including but not limited to her right of employment, unless terminated for the causes set forth in Defendant Denver's policies.

45.     Defendant, Denver, and the individual Defendants and its policymakers allowed, condoned and were deliberately indifferent to, the harassment and differential treatment of Plaintiff, based on her ethnicity, ancestry, color and race.

46.     The practice, and custom of harassment by virtue of Plaintiff's race, ethnicity, ancestry and color was effected under color of State law.

47.     There was no rational basis for the adverse, differential treatment of Plaintiff.

48.     The acts and omissions of Denver and the individual Defendants deprived Plaintiff of her rights as provided under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §§ 1981 and 1983. Such acts and omissions were motivated by evil motive or intent and involved reckless or callous indifference to the federally protected rights of Plaintiff.

49.     Defendants' practice and custom of discrimination and differential treatment was the proximate cause of Plaintiff's termination of employment.

50.     As a proximate result of Defendants' actions, Plaintiff has suffered severe physical and emotional distress, mental anguish, humiliation and other non-economic losses, loss of wages, loss of job, loss of benefits, and other economic losses.

## FIFTI CLAIM FOR RELIEF
(Violation of FMLA by Denver)

51.     Plaintiff hereby incorporates and makes reference to each and every allegation in paragraphs 1-50 of this complaint, as if set forth in extenso.

52.     Plaintiff's termination occurred within two weeks after her return from FMLA leave.

53.     Plaintiff's protected activity of taking FMLA leave was a motivating factor in Denver's decision to terminate her.

54.     Denver knowingly and intentionally discriminated and retaliated against Plaintiff for the exercise of her FMLA rights.

55.     Denver's decision to terminate Plaintiff was causally related to her FMLA leave, and was done knowingly and intentionally, by Denver in retaliation against Plaintiff for her exercise of her FMLA rights.

56.     The action by Denver in terminating Plaintiff on November 27, 2017, was the last event constituting the willful violation of Plaintiff's FMLA rights and is therefore timely brought pursuant to 29 USC § 2617 (c)(2).

57.     The actions of Defendant, Denver, caused Plaintiff to suffer loss of wages, and loss of benefits, plus interest on the amount of lost wages and benefits. The actions of Defendant, Denver, were not done in good faith, as Denver had no reasonable grounds for believing that the act of terminating Plaintiff was not a violation of 29 USCS § 2615, and therefore Plaintiff is entitled to liquidated damages equal to the sum of the amounts described in this paragraph.

**WIEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her:

(a)     back pay;

(b)     front pay;

(c)     compensatory damages;

23

(d)     punitive damages on the First through Fourth Claims for Relief;

(e)     liquidated damages on the Fifth Claim for Relief;

(f)     attorney fees and costs in this action including expert witness fees as

allowed by law;

(g)     pre- and post-judgment interest as allowed by law;

(h)     such further remedies allowed by law; and,

(i)     such further relief as justice requires.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS

Dated this 4th day of May 2020.

 s/ Nathan Davidovich
Nathan Davidovich
Davidovich Law Firm, LLC
501 South Cherry Street
Suite 1100
Denver, Colorado 80246
303-825-5529
720-409-3668 (fax)
nathandavidovich@talk-law.com
Attorney for Plaintiff

Address of Plaintiff:

6514 Benton Circle
Arvada, Colorado 80003