IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 19-cv-03710-RM-NRN

EMINA GEROVIC,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,
LEROY LEMOS,
MURPHY ROBINSON,
JAMES E. WILLIAMSON,
KEVIN O'NEIL,
JOEL WOMICK,
KYLE KNOEDLER, and
HSS, INC.,

    Defendants.

---

## ORDER

---

This employment discrimination and retaliation case is before the Court on four motions: the Motion for Summary Judgment by Defendants Womick, Knoedler, and HSS, Inc. (the "HSS Defendants") (ECF No. 92), the Motion for Summary Judgment by Defendants City and County of Denver, Lemos, Robinson, Williamson, and O'Neil (the "City Defendants") (ECF No. 97), the Motion for Partial Judgment on the Pleadings by the City Defendants (ECF No. 108), and the Motion for Partial Summary Judgment by Plaintiff (ECF No. 95). The Motions have been fully briefed and are ripe for review.

## I. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

### B. Judgment on the Pleadings

"Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgments as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138,

1141 (10th Cir. 2012) (quotation omitted). A motion for judgment on the pleadings is reviewed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). Accordingly, the Court must assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014).

## II.   BACKGROUND

These facts are undisputed. Plaintiff, "a Caucasian female of Bosnian ethnicity," worked for Defendant City and County of Denver (the "City") as a custodian in the Facilities Management Department from August 2014 until November 2017, when she was fired. (ECF No. 126, ¶ 1.) She worked at Denver Police District Five before being reassigned to a different building. (ECF No. 98-22 at 3.) Defendant Lemos, who is Hispanic,[1] served on Plaintiff's hiring committee and became her supervisor once she was hired. (ECF No. 126, ¶ 2.) During her employment, Plaintiff received reprimands for not wearing her safety shoes, receiving a poor to fair inspection report rating, personal use of her City-issued cell phone, and failure to answer her phone. (*Id.* at ¶¶ 11-13, 15.)

In September 2017, the City received information that Plaintiff was representing herself as a Denver Police Officer on her public Facebook page, and Defendant Lemos confirmed that her Facebook page listed her occupation as "Police Officer" and her employer as "Denver Police Department." (*Id.* at ¶¶ 28, 29.) Plaintiff was issued a Contemplation of Discipline letter and, the next day, assigned to a different building and a different shift. (*Id.* at ¶¶ 31, 32.) Plaintiff then met with Defendant Williamson, the Director of Facilities Management, in his office, where

---

[1] The Court uses the term "Hispanic" for the purposes of this Order because that is the term used by the parties.

3

she became very emotional. (*Id.* at ¶¶ 3, 35-37.) As a result of the meeting, Plaintiff was placed on paid administrative leave and scheduled for a fitness for duty exam. (*Id.* at ¶ 39.)

Defendant HSS, a private contractor, was hired by the City to provide security personnel services at government buildings. (ECF No. 112, ¶ 3.) Around the time Plaintiff was put on administrative leave, the City directed HSS employees Defendants Womick and Knoedler to make and distribute be-on-the-lookout ("BOLO") posters with Plaintiff's picture on them and directing HSS employees to contact their supervisor if they saw Plaintiff entering any building. (*Id.* at ¶¶ 4, 5, 7.) Plaintiff contends she learned about the BOLO posters when she returned from administrative leave and another employee told her she was not allowed to be in the building. (*Id.* at ¶ 25.) Plaintiff further contends as part of this lawsuit that the BOLO posters were a discriminatory act that caused her great embarrassment and humiliation and that some of them contained false information about when she was fired. (*Id.* at ¶ 6.) According to the HSS Defendants, the BOLO posters were kept at a security desk that was not accessible to the public or non-HSS employees. (ECF No. 92 at 3.)

Before returning to work in early October 2017, Plaintiff received a notice that her shift at the building to which she was reassigned had been changed back to her previous schedule. (ECF No. 126, ¶ 46.) Later that month, the City revised and re-issued the Contemplation of Discipline letter to include additional information about Plaintiff's Facebook posts. (*Id.* at ¶ 49.) Still later that month, Defendants Williamson and Lemos, Plaintiff, her attorney, and others attended a discipline meeting. (*Id.* at ¶ 50.) Afterward, Defendant Williamson made the decision to fire Plaintiff, and he issued a Notification of Dismissal on November 27, 2017. (*Id.* at ¶¶ 51, 54.)

4

The notification set forth Plaintiff's disciplinary history, which included written and verbal reprimands, two instances of documented counseling, and a verbal warning. (ECF No. 98-22 at 7-8.) But the primary focus of the notification was Plaintiff's public Facebook profile—which included pictures of Plaintiff wearing a sweatshirt with a Denver Police Department ("DPD") embroidered badge, a patrolman's hat, and a t-shirt with an embroidered DPD patch and a close-up photo of her DPD-issued access card that also featured a DPD badge—as well as Plaintiff's evasive and inconsistent answers with respect to the investigation into her Facebook posts. (*Id.* at 3-5.) The notification stated that "[f]alsely identifying yourself to the public as a police officer is both troubling and unacceptable" and further advised Plaintiff that "[r]epresenting yourself a police officer, as a joke or to impress others, is not only deceitful, but could be perceived as impersonating a police officer, which is a serious offense." (*Id.* at 4-5.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), checking the boxes for "retaliation," "race," and "color," but not the box for "national origin." (ECF No. 126, ¶ 62.) The gist of Plaintiff's discrimination charges is that she believed she was singled out by Defendant Lemos for disciplinary action and punishment because she "is not Latino." (ECF No. 98-42 at 5.) After obtaining a "right to sue" letter, Plaintiff filed this lawsuit. In the Second Amended Complaint, she alleges that Defendants "created and condoned a work environment that was hostile to employees who are not Hispanic" (ECF No. 53, ¶ 15) and asserts five claims for relief: (1) Title VII race and color discrimination against the City, (2) Title VII retaliation against the City, (3) an equal protection claim under 42 U.S.C. § 1981 against all Defendants except the City, (4) an equal protection under 42 U.S.C. § 1983 against all Defendants, and (5) violation of the Family Medical Leave Act against the

5

City.

## III. DISCUSSION

In her Response to the City Defendants' Motion, Plaintiff states that she does not object to the dismissal of her claims against Defendants Robinson and O'Neil or her third, fourth, and fifth claims against the City. (ECF No. 115 at 8 n.1.) The Court now turns to the remaining claims and the pending Motions.

### A. The HSS Defendants' Motion for Summary Judgment

Although it is not entirely clear from the Complaint, Plaintiff's Opposition to the HSS Defendants' Motion indicates that her claims against them are premised on their role in creating and distributing the BOLO posters.

#### 1. Section 1983 Claim

To establish a § 1983 claim, a plaintiff must allege (1) a violation of rights protected by the Constitution or created by federal law, (2) proximately caused (3) by the conduct of a person (4) who acted under color of state law. *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005).

The HSS Defendants moved for summary judgment on the § 1983 claim against them on the grounds that they did not act under color of state law when they created and distributed the BOLO posters. Several tests are used in this Circuit to determine whether a private entity is acting under color of state law, including the nexus test, the symbiotic relationship test, the joint action test, and the public functions test. *Anaya v. Crossroads Managed Care Sys, Inc.*, 195 F.3d 584, 595-96 (10th Cir. 1999). At the heart of each test is the requirement that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). In their Motion, the HSS

6

Defendants argue they are not state actors under any of the tests. In her Opposition, Plaintiff argues that they are state actors under the nexus test[2] because "the evidence clearly shows that the City expressly encouraged, explicitly directed, and, to a large extent, controlled, the posting and subsequent removal of the BOLOs." (ECF No. 102 at 7-8.)

In their Reply, the HSS Defendants stand by their argument that the state action element is not met but also raise the additional argument that they cannot be held liable under § 1983 because they acted as intermediaries and did not participate in the decision to issue the BOLO posters, and therefore the second element above is not satisfied.[3] The Court agrees, and therefore does not reach the issue of whether the HSS Defendants were state actors for purposes of § 1983.

Section 1983 imposes liability on state actors who cause any citizen to be subjected to the deprivation of their constitutional rights. 42 U.S.C. § 1983; *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). The requisite causal connection is satisfied if the defendants set in motion a series of events that they knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights. *Martinez*, 697 F.3d at 1255. Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* (quotation omitted).

---

[2] "Under the nexus test, a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the State itself." *Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002) (quotation omitted). "[U]nder this approach, a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quotation omitted).

[3] Recognizing that the arguments in their Reply might be deemed new, the HSS Defendants also stated that they did not object to Plaintiff filing a Sur-Reply, which she proceeded to file. Accordingly, the Court finds that any prejudice to Plaintiff stemming from the HSS Defendants raising new issues or arguments in their Reply has been cured.

In her Sur-Reply, Plaintiff argues that the HSS Defendants may be held liable for implementing the BOLO posters even though they acted at the direction of the City. But Plaintiff points to no evidence that the HSS Defendants knew or should have known that creating and posting the BOLO posters might violate Plaintiff's rights.[4] The mere fact that the HSS Defendants followed the City's directives to make and distribute the BOLO posters does not mean that they were the proximate cause of the alleged constitutional violation in this case. According to Plaintiff, the HSS Defendants "made the offending BOLO posters at the express request of the City," and BOLO posters for City employees "were *always* initiated directly by City departments." (ECF No. 102 at 8.) Plaintiff further asserts that "the City—not HSS— directed the removal of the BOLOs from all locations." (*Id.*) Thus, the record shows that the City was responsible for causing the BOLO posters to be issued, and there is no evidence that the HSS Defendants had any role in the City's decision. *Cf. Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) (citing cases where subordinate employees were held liable for significantly contributing to adverse employment decisions made by others). Although the HSS Defendants had a ministerial role in implementing the City's decision, there is no evidence that they could have reasonably foreseen that the notices would violate Plaintiff's rights. Nor are there allegations that the HSS Defendants harbored a discriminatory or retaliatory motive in performing their role. *See id.* Under these circumstances, the Court finds Plaintiff has failed to raise a genuine issue as to whether the HSS Defendants may be held liable for the alleged constitutional violation, and they are entitled to summary judgment on Plaintiff's § 1983 claim.

---

[4] In neither their Motion nor their Reply do the HSS Defendants challenge Plaintiff's contention that the BOLO posters effected a deprivation of her constitutional rights.

2. Section 1981 Claim

To establish a prima facie case of discrimination under § 1981, a plaintiff must show (1) that she is a member of a protected class, (2) that the defendant had the intent to discriminate on the basis of race, and (3) that the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).

In their Motion, the HSS Defendants argue that the absence of state action is fatal to Plaintiff's § 1981 claim as well as her § 1983 claim. In response, Plaintiff argues that state action is not required to state a "full and equal benefit" claim under § 1981. In their Reply, the HSS Defendants raise the additional argument that there is no evidence any HSS Defendant had the intent to discriminate on the basis of race. Plaintiff did not respond to this argument in her Sur-Reply.

The Court finds that Plaintiff's failure to adduce any evidence that the HSS Defendants intended to discriminate on the basis of race is fatal to her § 1981 claim against them, and the HSS Defendants are entitled to summary judgment on this claim as well.

**B.     The City Defendants' Motion for Summary Judgment**

Plaintiff's Response to the City Defendants' Motion indicates that her claims against the City Defendants are based solely on her termination.

1. Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from firing someone because of their race, color, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination with either direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Where, as here, a plaintiff relies

9

on circumstantial evidence, the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), is used to determine whether the evidence raises an inference of invidious discriminatory intent sufficient to survive summary judgment. *See Adamson*, 514 F.3d at 1145. First, the plaintiff must establish a prima face case of discrimination. *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011). Second, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for its action. *Id.* Third, if the defendant proffers such reasons, the burden shifts back to the plaintiff to show they are pretextual. *Id.*

Ordinarily, to establish a prima face case of discrimination, a plaintiff must show that she belongs to a protected class, was qualified for her position, suffered an adverse employment action, and was treated less favorably than others. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). "In a reverse discrimination case, however, a prima facie case of discrimination requires a stronger showing." *Id.* When a plaintiff does not belong to a protected group, she must establish either "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority" or "facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* (quotations omitted). For the reasons below, the Court finds Plaintiff has not established a prima facie case nor shown that the City's stated reasons for firing her were pretextual.

      a. *Discrimination based on race or color*

The City Defendants first argue that Plaintiff has failed to make the showing required to establish a prima facie case for a reverse discrimination claim. In response, Plaintiff argues that

there is a reasonable probability that she would not have been fired were she not "of Caucasian origin and non-Hispanic." (ECF No. 115 at 12.) To support her argument, she lists a handful of alleged incidents of misconduct by Hispanic employees that did not result in their being fired. For example, she states that one Hispanic employee was suspended for stealing a plant from the workplace, and that another was written up for having her shirt unbuttoned. (*Id.* at 2.)

The Court finds such incidents are factually distinct from the misconduct that primarily prompted Plaintiff's firing—representing herself as a police officer on Facebook. Further, these incidents, as presented by Plaintiff, are not helpful to her because she has not provided obviously pertinent information needed to make a proper comparison, such as the disciplinary histories of the employees involved or who their supervisors were. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (stating that employees are similarly situated to the plaintiff if they deal with same supervisor and are subject to the same standards governing performance evaluation and discipline and that courts should also compare the relevant employment circumstances, such as work history and company policies). Thus, the Court finds these incidents do not provide a basis for establishing that Plaintiff would not have been fired if she were not non-Hispanic, and Plaintiff cannot establish a prima facie case of reverse discrimination.

b. *Discrimination based on national origin*

Nor is the Court persuaded by Plaintiff's contention that she established a prima facie case of discrimination based on national origin. Although she did not check the box for "national origin discrimination" on her EEOC complaint, she argues that the issue is administratively exhausted because the allegations therein put the City Defendants on notice of

both a race discrimination claim and a national origin discrimination claim.  This argument lacks merit.  Plaintiff's three-page description attached to her EEOC complaint contains a single mention of her national origin, stating that she "is a naturalized US citizen who arrived in America after enduring many years of war in her birthplace, Bosnia-Herzegovina."  (ECF No. 98-42 at 3.)  The EEOC complaint, like the Complaint in this case, is devoid of any allegations that Plaintiff was treated differently because she came from Bosnia or even that her national origin was ever mentioned or alluded to by any Defendant.  Although precise pleading is not required in an EEOC complaint and claims in a subsequently filed complaint are deemed administratively exhausted if they are reasonably related to the allegations in the EEOC charge, *see Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), the Court finds Plaintiff failed to exhaust her claim based on national origin discrimination.

      Moreover, Plaintiff's single mention of her national origin along with failing to check the box for "national origin" did not put the City on notice of a discrimination claim based on national origin.  The purpose of the EEOC exhaustion requirement, in addition to giving notice of the alleged violation to the charged party, is "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."  *Smith v. Cheyenne Ret. Invs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  The Court finds the allegations in Plaintiff's EEOC complaint did not effectuate Title VII's goal of giving the EEOC an opportunity to conciliate such a claim by securing voluntary compliance.  *See Smith v. Cheyenne Ret. Invs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  The Court further finds that even if the claim was exhausted, Plaintiff has failed to establish a prima facie case by alleging any facts giving rise to an inference of discrimination based on national origin.  *See EEOC v. PVNF,*

*L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

          c.     *Pretext*

The City Defendants also argue they are entitled to summary judgment because Plaintiff has failed to establish pretext. The Court agrees. As set forth in the City Defendants' eight-page dismissal letter, the City found Plaintiff's most egregious misconduct was representing herself as a police officer on Facebook, but her disciplinary history included various instances of less serious misconduct as well. Plaintiff has not shown these reasons are unworthy of belief, and, taken together, they provide a legitimate, nondiscriminatory basis for her firing. *See Adamson*, 514 F.3d at 1146. The Court's role is not to act as a "super personnel department" by second guessing employers' business judgments; rather, it must determine whether its stated rationale is genuine. *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). Thus, "[t]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007) (quotation omitted). Conclusory assertions are insufficient to support an inference of discrimination. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1266 (10th Cir. 2019).

Here, Plaintiff admits she was responsible for the Facebook posts but argues, essentially, that they were just a joke and that the City made too big a deal out of them. However, she has not shown that the City's explanation for firing her contains such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could find it unworthy of credence. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). As explained in the Notification of Dismissal, during the investigation into the

Facebook posts, Plaintiff made multiple evasive and nonresponsive statements that the City found difficult to reconcile.  The City also noted that Plaintiff had received a verbal reprimand for wearing a Denver Police Department sweatshirt while on the job, and that other misconduct had resulted in reprimands, documented counseling, and a verbal warning.  Considering the facts as they appeared to the City at the time she was fired, Plaintiff has not shown that its stated reasons for firing her were not honestly held.  Plaintiff's subjective beliefs about her own job performance do not raise a genuine issue of material fact regarding the City's stated bases for her termination.  *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006).  Therefore, the City is entitled to summary judgment on Plaintiff's discrimination claim for the additional reason that there is no genuine issue as to whether its explanation for firing her was pretextual.

        2.       <u>Title VII Retaliation Claim</u>

Plaintiff's retaliation claim is also assessed under the burden-shifting framework set forth in *McDonnell Douglass*, 411 U.S. at 802-04.  To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) the City Defendants took an adverse action against her, and (3) a causal connection between the protected activity and the adverse action.  *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).  If Plaintiff establishes a prima face case of retaliation, the burden of production shifts to the City Defendants to articulate a legitimate, nondiscriminatory reason for firing her.  Once they do so, they are entitled to summary judgment unless Plaintiff can show a genuine issue of material fact as to whether the stated reasons were pretextual.  *See id.* at 1267.

The City Defendants argue that Plaintiff cannot establish a prima facie retaliation case

14

because she has not adduced evidence linking her firing with any protected activity. Again, the Court agrees. And, even if she were able to establish a prima facie case, her retaliation claim would fail because, as discussed above, she has not raised a genuine issue as to whether Defendant's reasons for firing her were pretextual.

Plaintiff alleges "that she complained about racial discrimination a number of times without any action being taken." (ECF No. 115 at 17.) For present purposes, the Court will assume that Plaintiff engaged in some protected activity by complaining about Defendant Lemos "treating her differently because she was not Hispanic and constantly harassing her." (*Id.*) However, she has not adduced any evidence that such complaints prompted the investigation into her Facebook posts, which is what ultimately lead to her termination. Nor has she cited evidence in the record that any specific complaint was made within a month and a half of her termination.[5] *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing precedent for the propositions that a one-and-a-half-month period may, by itself, establish causation, while a three-month period, standing alone, is insufficient). In *Anderson*, the court declined to decide the issue of whether two months and one week was sufficient to support a prima facie case of retaliation. Here, Plaintiff has adduced no evidence to support her assertion that she complained in September or October 2017. (*See* ECF No. 126, ¶ 99 (noting that the cited pages of the deposition are not included in the record and that the deposition itself contains no testimony supporting this assertion).) She also has not shown that Defendant Williamson, who made the decision to fire her, knew about any such protected activity. Nor has she pointed to any other

---

[5] To the extent Plaintiff's Response suggests the re-issuance of the Contemplation of Discipline letter was an adverse employment action (*see* ECF No. 115 at 18), the Court disagrees. The Court further finds, based on statements and headings in the Response, that Plaintiff has waived the argument that any conduct other than her termination supports her retaliation claim against the City Defendants.

evidence to support causation. Evidence of but-for causation on a retaliation claim must be based on more than mere speculation, conjecture, or surmise. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). On the current record, the Court find Plaintiff has failed to make a sufficient showing as to causation to establish a prima facie case of retaliation. Accordingly, the City is entitled to summary judgment on this claim.

        3.     <u>Claims Under Sections 1981 and 1983</u>

Plaintiff's claims under §§ 1981 and 1983 also assessed under the burden-shifting framework set forth in *McDonnell Douglass*, 411 U.S. at 802-04, *see Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991), and are subject to dismissal for the same reasons her Title VII claims fail. Plaintiff has not established either a prima facie case or adduced evidence of pretext to sustain a wrongful discharge claim against the City Defendants.

        **C.**     **The City Defendants' Motion for Partial Judgment on the Pleadings**

In her Motion for Partial Summary Judgment, Plaintiff asserted a claim for relief under Colorado's lawful activities statute, Colo. Rev. Stat. § 24-34-402.5. In their Motion for Partial Summary Judgment on the Pleadings, the City Defendants assert that this claim should be dismissed because it is not properly pleaded in the operative Second Amended Complaint or in any of Plaintiff's prior iterations of the Complaint. In her Response, Plaintiff concedes that her § 24-34-402.5 claim "is untimely both on failure to exhaust administrative remedies and statutes of limitation grounds." (ECF No. 121 at 2.) Accordingly, the Court grants the City Defendants' Motion and dismisses with prejudice any claim under § 24-34-402.5.

The City Defendants' request for attorney fees is denied without prejudice. This Court's Practice Standards do not permit a filing to contain a separate motion. *See* Civ. Practice

Standard IV.A. And, the City Defendants have not complied with the requirements of D.C.COLO.LCivR. 54.3.

### D. Plaintiff's Motion for Partial Summary Judgment

After the City responded to Plaintiff's Motion for Partial Summary Judgment, Plaintiff agreed to withdraw the Motion or allow the Court to deny it. (ECF No. 113 at 2.) Therefore, the Motion is denied as moot.

## IV. CONCLUSION

Accordingly, the HSS Defendants' Motion for Summary Judgment (ECF No. 92), the City Defendants' Motion for Summary Judgment (ECF No. 97), and the City Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 108) are GRANTED. Plaintiff's Motion for Partial Summary Judgment (ECF No. 95) is DENIED AS MOOT, and the Clerk is directed to CLOSE this case.

DATED this 4th day of January, 2022.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge